IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| BOBYS & ASSOCIATES INC., <br><br> Plaintiff, <br><br> v. <br><br> PAETEC COMMUNICATIONS INC. et al., <br><br> Defendants. | Civil Action No. 8:13-cv-01811-AW |

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss in Favor of Arbitration (Motion to Dismiss). The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In May 2013, Plaintiff filed a Complaint in the Circuit Court for Montgomery County, Maryland. Plaintiff's Complaint sounds in breach of contract. Plaintiff alleges that it entered into a sales agreement (Agreement) with Defendant Paetec Communication, Inc.'s (Paetec) predecessor in interest. Plaintiff further alleges that Defendant Windstream Corporation acquired Paetec. Plaintiff alleges that Defendants failed to pay it adequate commissions in accordance with the Agreement. Plaintiff further alleges that Defendants unlawfully terminated the Agreement. Finally, Plaintiff alleges that Defendants improperly blocked its access to files and/or paperwork necessary to verify that Defendants had properly compensated it under the Agreement. Out of these core allegations, Plaintiff asserts a breach of contract claim with associated claims for declaratory relief and accounting. Doc. No. 2.

Defendants removed the case on June 21, 2013. A week later, Defendants filed their Motion to Dismiss. Doc. No. 8. Defendants assert that Section 13.1 of the Agreement contains a mandatory arbitration clause and ask this Court to refer the action to arbitration. In pertinent part, Section 13.1 reads as follows: "Any dispute relating to this Agreement will be finally settled by arbitration by one arbiter according to the then current Commercial Arbitration Rules of the American Arbitration Association." Doc. No. 8-2 § 13.2, at 7.

## II.  STANDARD OF REVIEW

### A.  Preliminary Issues

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *PC Constr. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012) (alteration in original) (citation and internal quotation marks omitted). "Whether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *Id.* (citation omitted).

In this case, the only document outside the Complaint that the Court must consider is the Agreement. However, the Plaintiff attaches the Agreement to the Complaint and refers to it therein. Likewise, the Agreement is integral to the Complaint. Therefore, the Court treats the Agreement as a part of the Complaint. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, the Court considers the instant Motion under a Rule 12(b)(6) analysis.

### B.  Motion to Dismiss—Rule 12(b)(6)

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the

U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III.   LEGAL ANALYSIS

#### A.   Choice of Law

"The Supreme Court has directed that [courts] apply ordinary state-law principles that govern the formation of contracts when assessing whether the parties agreed to arbitrate a matter." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (citation and internal quotation marks omitted). "Maryland generally follows the lex loci contractus principle, under

which the law of the jurisdiction where the contract was made controls its validity and construction." *Id.* (citation and internal quotation marks omitted). "In deciding questions of interpretation and validity of contract provisions, Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made." *Speechly Bircham, LLP v. Miller*, Civil Action No. 8:10–cv–03041–AW, 2012 WL 4341574, at *3 (D. Md. Sep. 20, 2012) (citation and internal quotation marks omitted). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Blanch v. Chubb & Son, Inc.*, Civil No. CCB–12–1965, 2013 WL 4026919, at *2 (D. Md. Aug. 6, 2013) (citation and internal quotation marks omitted). However, Maryland law generally accepts that "the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 517 (D. Md. 2011) (citation and internal quotation marks omitted). Therefore, absent a strong public policy to the contrary, courts "need not inquire into the validity of choice-of-law provisions . . . ." *Id.* (citations and internal quotation marks omitted); *cf. Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 805 (Md. 2007) (citations and internal quotation marks omitted) (noting that, under lex loci, Maryland courts will recognize the validity of choice-of-law clauses absent "a strong public policy against its enforcement").

In this case, Defendants apply North Carolina law to the interpretation of the Agreement based on a choice-of-law clause. Doc. No. 8-2 § 13.1, at 7. No overriding concerns of public policy counsel against the application of North Carolina law. Although it is unclear in what state the Agreement was made, the outcome would be the same under North Carolina law or the law of any other state. The Agreement unequivocally states that "[a]ny dispute relating" to it would be "settled by arbitration." The contract law of any state would presumably require the Court to

give effect to the Parties' intent to arbitrate the dispute as this clear language expresses. See

*United States v. Seckinger*, 397 U.S. 203, 210 (1970) (acknowledging the existence of "general

principles that have evolved concerning the interpretation of contractual provisions"); *see also

Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 32 (2004) (alteration in original) (citation and internal

quotation marks omitted) ("[W]here the words of a . . . contract[] have a plain and obvious

meaning, all construction, in hostility with such meaning, is excluded."); *U.S. Fidelity & Guar.

Co. v. Guenther*, 281 U.S. 34, 37 (1930) (stating that the clear and unambiguous terms in a

contract should be "taken and understood in their plain, ordinary, and popular sense"). Indeed, a

contrary outcome would be irreconcilable with the FAA's "clear federal directive in support of

arbitration." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation and internal

quotation marks omitted). Accordingly, albeit academic, the Court applies North Carolina law to

determine whether Defendants may enforce the Agreement's arbitration provision.

**B.     Discussion**

The FAA embodies "a liberal federal policy favoring arbitration agreements." *Moses H.

Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *O'Neil v. Hilton Head

Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997). Two key factors driving this policy are the

affordability and expediency that arbitration offers in lieu of litigation. *See Circuit City Stores,

Inc. v. Adams*, 532 U.S. 105, 122 (2001). This liberal policy requires courts to "rigorously

enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

In accordance with this mandate, "any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25. Thus, it is well-settled that "the party

seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude

arbitration of the statutory claims at issue." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citing *Moses*, 460 U.S. at 24). "The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Id.* (quoting *Moses*, 460 U.S. at 24). However, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins*, 303 F.3d at 500–01 (4th Cir. 2002) (citing *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995)).

Specifically, a "litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Defendants have easily satisfied these requirements in this case. As for element one, Plaintiff alleges that the Parties had a contractual relationship that Defendants allegedly violated. Element two is satisfied in light of the Agreement, which both Plaintiff and Defendants executed, and which the Complaint incorporates. The relationship between the Agreement and interstate commerce is apparent on its face. The Parties are commercial entities located in different states and the Agreement contemplates the sale of telecommunication services. And the fact that Plaintiff filed the suit in state court as opposed to arbitrating it shows that Plaintiff refuses to

arbitrate it. Moreover, although Plaintiff has not responded to Defendants' Motion to Dismiss, the Agreement plainly and unambiguously requires the Parties to arbitrate it. *See, e.g.*, *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 127 S.E.2d 539, 541 (N.C. 1962) (citation omitted) ("When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit.").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and orders that the case be submitted to arbitration pursuant to 9 U.S.C. § 206. A separate Order follows.

| August 26, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |